My name is Bernadette Willick-McConnelly, and I'm the attorney for Petitioner Ivan Pierre Batinic, and I do not need an interpreter. I'm just joking. I'm sorry. What did you say? She said she didn't need an interpreter, which might help us out by moving the mic just a little closer. Could you speak a little louder? I'm having trouble hearing you. We can't take your word for that. We know that. And I would like to reserve two minutes for battle time, please. Now, this case is a case where the Board of Immigration Appeals reversed a decision that was favorable for my client without announcing what standard of review it used. It did not weigh all equities favorable and unfavorable factors that were presented in the case, and also did not explain why it considered my client's criminal conviction a particularly serious crime, basically a perceived crime that would prevent him from ever being able to obtain a waiver. Counsel, may I ask you a question? When you say that the BIA did not announce the standard of review that it was applying, when reviewing the IJ decision, the BIA did not announce the standard of review? Yes. But does it have to? Well, Your Honor, this court has repeatedly said that it's unfair to people who file appeals to have to guess at what standard of review is used. A standard of review is decisive often on how a case will be decided, because there are different levels on how you review a case. For example, if the BIA was looking at the factual determination by the immigration judge, their own regulations say that they cannot review de novo. They have to look for clear, erroneous determination. That was my next question. If the regulation sets forth a standard of review that must be applied, then is it still necessary for the BIA to reiterate that if the regulation gives parties the standard of review that's going to be applied? Well, yes, because regulations may be there, but that does not mean that the BIA does follow it as evidence in this case here. They engage in a de novo review of the immigration judge's decision, for example, that my client was a The immigration judge had specifically found that he had shown an appropriate level of remorse and that he was rehabilitated. The BIA went back and said no. He was trying to basically diminish his culpability, and we don't see true remorse. But, counsel, can we look at that at all? Isn't that part of the discretionary determination of adjustment of status that we cannot review? No, Your Honor. Why not? Well, because the case that the government cited was Bazua-Cota v. Gonzales. In that case, the facts are different. The immigration judge in that case had denied the respondents the aliens relief applications, and that was reviewed by the BIA. This Court does have jurisdiction to review legal claims and claims of constitutional violations. So we are not asking this Court to look at a discretionary determination. What we are asking this Court is to look at the BIA's violation of my client's constitutional rights and its abuse of discretion, for example. Again, it didn't announce a standard of review. May I stop you there for a second? I mean, it's an interesting point. And in other cases, for example, asylum or something like this, I think it might have greater force. The problem I have, and it's a variation, I guess, of what was concerning Judge Robinson, is that we ultimately have a discretionary decision here. And the BIA is given the authority to exercise its discretion in a manner different from the IJ. So isn't it a little bit different when we're talking about discretionary decisions, whether or not a standard of review applies at all? Because I think, particularly in adjustment of status, perhaps waiver when it's a purely discretionary decision, that the Attorney General has vested the BIA with the authority to engage in de novo review of the weighing of the factors, not necessarily the facts, but of the factors. Could you generally respond to that? Yes, Your Honor. First of all, we are not only saying that the BIA did not enunciate the standard of review. We are also saying the BIA did not consider all of the factors favorable or unfavorable presented. And there was a case, in fact, where you were on the panel in Zeng, V. Holder, where basically this Court's finding was that the BIA abuses its discretion if it does not weigh all of the factors that are presented. And in this case, the BIA did not weigh all of the factors presented. For example, it didn't even address the hardship that it would cause to Petitioner Zweig if he were to be deported. They pushed that on the back burner by basically saying, well, we don't even have to look at it because we don't agree that he should get to 12-H waiver, so we don't have to assess the hardship. They cite two factors that are favorable, his long residency and the family ties. Then they cursory say, oh, well, because he stole material from one employer where he had been working for one year that now basically wipes away his long and consistent employment history. They don't say that they don't mention that he had three patents approved and had filed for 13. They don't address these factors. So we are not looking in only whether or not the BIA has made a discretionary decision. We are looking at how did they deal with this case? How did they arrive at the decision? And while it's true that maybe the BIA has discretion to deny an adjustment application, there are still some guideposts that have to be reached in order to go to this decision. And this Court has clearly jurisdiction to review whether these guideposts were met and whether or not the BIA followed his own guidelines and followed the case law by weighing the equities. Another thing is this Court has often criticized that or that it seems that, for example, in drug cases, drug trafficking cases in particular, the BIA has a tendency to deny by saying that that is a particularly serious crime. Now, here they said that because my client violated the expert laws of the United States, that that was a particularly serious crime. Well, you know, this was not an espionage case. The district judge in that case specifically said that it was a property crime. It was not a crime involving violence or drugs. But none of that, I don't know why the BIA found that a particularly serious crime because they don't explain it. And I think that the petitioner in cases where there is a family unity at stake, where he has been here for over 50 years, he came in 1967, he has been here, he has his family here, that there is a right to know why a decision was made. Otherwise, we can go to a kangaroo court and say, oh, I don't like your nose. I don't have to explain why I don't like it. I just use my discretion and, you know, deny your case. So we need to have a standard where the BIA, number one, explains what standard of review it uses, because if it had used the factual determination by the immigration judge and reviewed it under the proper standard, they would have to find it clearly erroneous. And there could not have been such a finding because the immigration judge's decision was very reasoned and explained. If this was straight espionage, would you have any doubt about it? Well, you know, as a ‑‑ If it was ‑‑ If it was a straight espionage case, it would be, for me, it would be different, yes. Because ‑‑ It would have been different. And yet espionage can occur with the sale of secret information from a United States, a person living in the United States and having control over it, to a foreign government. Yes, Your Honor, but that is ‑‑ And isn't that what happened here? No, Your Honor, because actually he was not charged with violating ‑‑ I didn't ask you what he was charged with. I asked you what happened. Well, he ‑‑ it was not sold, no. He ‑‑ It was not sold to the foreign government. Who was it sold to? No, it was not sold. Who was it sold to? He was ‑‑ they were conspiring to sell, but it was never sold. Well, who were they conspiring to sell it to? To Russia at the time. To the Soviet Union? Soviet Union, yes. Yeah, okay. But, again, he was not ‑‑ he was not charged with a violation of U.S.C. 794. I understand that. So, and that brings me to my next point, that the government actually argued that, and because he was not given an extension of the briefing schedule at the BIA, he was not ‑‑ he could not address those arguments. All right. I think we have your argument in hand. Do you want to save some time for rebuttal? Yes. Thank you. Very good. May it please the Court, Christina Paraskindola for the Attorney General. To the extent that Mr. Batsonik seeks review of the Attorney General's denial of the waiver of his inadmissibility and the exercise of discretion, we respectfully submit that the Court does not have jurisdiction. Also, to answer Judge Rawlinson's question, the Board is not obligated to recite the standard of review. Indeed, this Court issues many decisions without reciting it. And we would also submit that Mr. Batsonik has not shown that he was denied due process in his appeal to the Board. He was already granted an extension to file a brief. He asked for another extension the day after his brief was due. The Board sent him instructions on how to file a late brief. He did not do that. He hasn't shown how he was prejudiced in any way by not being able to file a brief, by telling us what arguments he would have raised, how that would have changed the outcome of his case. If there are no further questions, we submit on the briefs. Well, I guess a couple. What standard of review do you think the BIA should employ in reviewing a discretionary decision by the immigration judge? Your Honor, the Board's regulations require it to apply a de novo standard of review. So to what extent must the BIA defer to the factual findings of the IJA in such a review? In other words, I tend to agree with you that the weighing can be de novo. But I don't see any citation in any of the briefs about what standard of review the BIA ought to employ in reviewing the factual underpinnings. To a purely factual determination, the standard of review is clear error. And obviously we don't have jurisdiction over the ultimate discretionary decision, but we do have jurisdiction over errors of law. So if we thought that the BIA had engaged in an inappropriate standard of review, what would we do? Yes, Your Honor, well, the remedy would be to remand, but I don't think that's what happened here. And, you know, the record's pretty clear in the Board's decision that it did consider the positive equities in Mr. Batinick's favor. He has been in the United States for over 40 years, his wife suffers from depression, there were strong equities. However, given the nature of the offense, conspiring to sell prohibited technology to the Soviets is very serious. And he tried to downplay his role in it, and, you know, if he is granted the relief that he seeks, he can adjust his status to that of lawful permanent resident and would be eligible for citizenship. And I think these are things that we have to bear in mind. But the interesting thing is that the IJ, who heard all of this testimony over many days, concluded that he was, in fact, entitled to the waiver. I mean, it's not many cases you see of this type where the exercise of discretion is different between the IJ and the BIA. You would agree? Yes. This is, I haven't seen any other, excuse me, any other cases like this. But, again, that is the Board's standard of review. It can take all of the evidence and the factual findings and review it de novo. Yeah, just like we do sometimes with district court judges. It's just that's the way the game works sometimes. Okay. Any further questions? No. Okay. Thank you. All right. Just a few remarks. First of all, when Mr. Batanich was in removal proceedings and his deportability had not been adjudicated yet, he was actually eligible to apply for naturalization, and he did so. The only reason why he couldn't proceed with that was because he was in deportation proceedings and immigration refused to issue a firm statement that he was eligible. So that process is no longer available to him? Is that your? That is correct. Unless the case would be remanded, you know, but deportability was now established, so he no longer has that green card on which he could immediately proceed to apply for naturalization. Is he barred forever from seeking to adjust his status? From adjusting his status? No. From naturalization? No. Right. He would be statutorily eligible, and it would be up to the DHS to determine whether they would give that to him, given his conviction. But statutorily, he is eligible. Okay. Then I also wanted to say that this Court has found in Akanemi v. INS that the Court of Appeals does not have the authority to determine the way that an appeals court has used or given to each factor. But they have an obligation to assure that the board determination has not inexplicably departed from established policy or rested on an impermissible basis. And the – and also, while the Court has had in Verkney, INS, that this Court cannot require the BIA to consider any particular factors. And I agree with that. But, counsel, you're not saying that the BIA has to agree with the discretionary determination made by the I.J. in all instances, are you? No, I'm not, Your Honor. That – no. That definitely not, because they have the novel review of discretionary. But what I'm saying is, is the factual determination by the I.J. has to be reviewed for clear erroneous. What was the factual determination in this case that was made by the I.J. that you think was not respected by the BIA? Number one, the issue of rehabilitation. Number two, very decisive, that this crime was not a particularly serious crime. That was a factual determination. She – she explained. Do you think the – whether a crime was a serious one or not is a factual determination? Yes, Your Honor. Because you look at certain factors, enumerated factual factors, that you also use, for example, in withholding of removal cases or asylum cases to determine, especially in withholding of removal cases, whether a crime was particularly serious. But there was no dispute about the underlying facts as to what happened. That is correct. But what the – what the immigration judge pointed out is, is that you have to stick with the – with the conviction record and the nature of the underlying charge. And the BIA, without explaining why it – why it arrived at a different position, seems to have looked at the arguments of DHS and not looked at the actual charges, which was violation of the export laws. And that was also the conviction record. But that's an application of the facts to the law, isn't it? No, that's a factual determination, because they went outside. And without explaining how they arrived at that, they made a factual determination that it was a particularly serious crime. Okay. Your time has expired. Thank you for your argument. Thank you. The case will be suspended for decision.
judges: Thomas, Rawlinson, Duffy